UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MARQUEZ B. PERRY,
    Plaintiff,

vs.

WARDEN WARREN
CORRECTIONAL INSTITUTION, *et al.*,
    Defendants.

Case No. 1:20-cv-30

Black, J.
Litkovitz, M.J.

**ORDER AND REPORT
AND RECOMMENDATION**

Plaintiff, a pro se inmate, who is currently confined at the Southern Ohio Correctional Facility (SOCF) in Lucasville, Ohio, has filed a motion for leave to proceed *in forma pauperis* in connection with an amended complaint alleging violations of his rights under state and federal laws while confined at the Warren Correctional Institution (WCI) in Lebanon, Ohio. (Doc. 1).[1]

Noting that plaintiff's initial complaint was single-spaced and thirty pages long and that plaintiff had also filed three motions to amend his complaint, the Court ordered plaintiff to file a single, double-spaced, comprehensive complaint, which must not exceed 20 pages in length, setting forth in clear, short and concise terms the names of each defendant, the specific claims for relief attributable to each defendant, and the factual allegations supporting each such claim within thirty (30) days (Doc. 7). *See* Fed. R. Civ. P. 8(a); *see also* S.D. Ohio Local Rule 5.1. Plaintiff has now submitted his amended complaint in compliance with the Court's Order.[2] (Doc. 12). By separate Order, plaintiff has been granted leave to proceed *in forma pauperis*.

In light of the submission of plaintiff's amended complaint (Doc. 12), plaintiff's previously filed motions to amend his complaint (Docs. 2, 3, and 4) are **DENIED as moot**. The

---

[1] At the time plaintiff filed his initial complaint, he was confined at WCI. He indicates in his amended complaint that he is currently confined at SOCF (*see* Doc. 12, at PageID 150). The **CLERK OF COURT is DIRECTED** to update the Docket Sheet with plaintiff's place of current confinement.

[2] This new, amended complaint (Doc. 12) is the "legally operative complaint." *Parry v. Mohawk Motors of Mich., Inc.,* 236 F.3d 299, 306 (6th Cir. 2000). The **CLERK OF COURT** is **DIRECTED** to update the Docket Sheet in this case to reflect the defendants, listed below, who are named in the operative complaint (Doc. 12).

Court **GRANTS** plaintiff's "Motion for the Court to Accept Dual Jurisdiction" over his state and federal law claims (Doc. 5) **to the extent** consistent with 28 U.S.C. § 1367(c), the Federal Rules of Civil Procedure, and the Local Rules of this Court. In the March 30, 2020 Report and Recommendation (Doc. 10), currently pending before the District Court, the undersigned has recommended denying plaintiff's motion for preliminary injunction (Doc. 8).

This matter is now before the Court for a s*ua sponte* review of the amended complaint to determine whether the amended complaint or any portion of it should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief. *See* Prison Litigation Reform Act of 1995 § 804, 28 U.S.C. § 1915(e)(2)(B); § 805, 28 U.S.C. § 1915A(b).

**I.    Screening of Amended Complaint**

    **A.    Legal Standard**

In enacting the original *in forma pauperis* statute, Congress recognized that a "litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Denton v. Hernandez,* 504 U.S. 25, 31 (1992) (quoting *Neitzke v. Williams,* 490 U.S. 319, 324 (1989)). To prevent such abusive litigation, Congress has authorized federal courts to dismiss an *in forma pauperis* complaint if they are satisfied that the action is frivolous or malicious. *Id.*; *see also* 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A(b)(1). A complaint may be dismissed as frivolous when the plaintiff cannot make any claim with a rational or arguable basis in fact or law. *Neitzke v. Williams,* 490 U.S. 319, 328-29 (1989); *see also Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990). An action has no arguable legal basis when the defendant is immune from suit or when plaintiff claims a violation of a legal interest which clearly does not exist. *Neitzke,* 490 U.S. at 327. An action has no arguable factual basis when the allegations are delusional or rise

to the level of the irrational or "wholly incredible." *Denton,* 504 U.S. at 32; *Lawler,* 898 F.2d at 1199. The Court need not accept as true factual allegations that are "fantastic or delusional" in reviewing a complaint for frivolousness. *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010) (quoting *Neitzke*, 490 U.S. at 328).

Congress also has authorized the *sua sponte* dismissal of complaints that fail to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915 (e)(2)(B)(ii) and 1915A(b)(1). A complaint filed by a *pro se* plaintiff must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). By the same token, however, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Hill*, 630 F.3d at 470-71 ("dismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim" under §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Court must accept all well-pleaded factual allegations as true, but need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Although a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual

3

enhancement." *Id.* at 557. The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson*, 551 U.S. at 93 (citations omitted).

### B. Plaintiff's Allegations

Plaintiff sues "BOSC," which plaintiff identified in an earlier submission to the Court as the "Bureau of Classification and Security" (*see* Doc. 3, at PageID 80), WCI, the Ohio Department of Rehabilitation and Correction (ODRC), the WCI Investigator's Office, and the following officials: "C.O. Burke," "Sgt. Ewen," "U.M.C. McIntosh," "Inspector Hill," "Shift Lt. Little," "Acting Unit Manager Mr. Fornier," "C.O. John Doe," "Shift Capt. Bach," "PREA [Prison Rape Elimination Act] Coordinator Eulenburg," "John Doe of BOSC," "C.O. Miller," "Sgt. Combs," "Unit Manager Sarwar," "Acting Inspector Chamblin," "Inspector Bullock," "Lt. Teague," "ODRC Director Ms. Smith," "Deputy Warden Luneke," and "Warden Wanza Jackson Mitchell." (Doc. 12, at PageID 136-49).

Plaintiff alleges that in July 2019 he was raped by his cellmate at WCI. (*See* Doc. 12, at PageID 137-38, 148). Plaintiff alleges that before his rape he reported feeling unsafe in his cell to defendants Burke, Ewen, McIntosh, and Hill, but these defendants failed to move him. (Doc. 12, at PageID 136-38). Plaintiff alleges that Ewen refused to help because plaintiff did not have any "dirt" on other inmates. (Doc. 12, at PageID 137). Plaintiff further alleges that he tried to report his rape to Burke the morning after it occurred, but Burke did not get plaintiff medical attention or have evidence collected. (Doc. 12, at PageID 137).

Plaintiff also alleges that he requested a cell move from defendant Fornier on two occasions prior to the rape and showed Fornier a kite that was signed by Unit Manager Crosby and Crosby's boss approving the move request.[3] Plaintiff alleges that Fornier did not move him.

---

[3]Unit Manager Crosby is not named as a defendant in the case. Plaintiff does not identify the name of Crosby's boss. (*See* Doc. 12, at PageID 139).

4

(Doc. 12, at PageID 139-40).

Plaintiff alleges that the morning after he was raped, defendant Little was called to plaintiff's Unit because plaintiff refused to allow his cellmate back into the cell after the cellmate went to breakfast. (Doc. 12, at PageID 138). Plaintiff was placed in cuffs and taken to the "hole." (Doc. 12, at PageID 138, 140). Plaintiff told defendants Little, C.O. John Doe, Burke, and Fornier that plaintiff wanted to report a sexual assault. Plaintiff asserts that these defendants told him to go to his cell and someone would see him. According to plaintiff, no one came to interview him, and the defendants failed to get plaintiff medical or mental-health treatment or collect evidence. (Doc. 12, at PageID 138-40). Plaintiff asserts that as a result no criminal charges were brought against his assailant, and plaintiff did not get the medical or mental health attention that he needed. (Doc. 12, at PageID 138-39).

Plaintiff alleges that after waiting a few days for someone to interview him, he sent a kite to the Warden informing her that he needed to report a sexual assault. (Doc. 12, at PageID 140). Plaintiff alleges that instead of informing the PREA coordinator and sending investigators, the Warden sent four corrections officers led by defendant Bach. (Doc. 12, PageID 140-41). Bach and the corrections officers allegedly scared plaintiff into keeping quiet. (Doc. 12, PageID 141). Plaintiff claims he reported the corrections officers and Bach to the Investigator's Office, which made Bach angry. (Doc. 12, at PageID 141). Plaintiff alleges that Bach harassed plaintiff and told him that he would not be watching television anytime soon. (Doc. 12, at PageID 141). Plaintiff claims that he later found his television screen shattered. (Doc. 12, at PageID 141). According to plaintiff, Little participated in Bach's attempt to silence plaintiff. (Doc. 12, at PageID 139).

Plaintiff asserts that once he saw that he was not getting help, he called an "outside hotline" and spoke to Investigator Jones, who is not named as a defendant, and wrote to the

5

investigator's tip line. (Doc. 12, at PageID 141-42). Plaintiff alleges that he gave what he was told would be a confidential statement to defendant Eulenburg and was placed in Unit 1B—a protective block. (Doc. 12, at PageID 142). However, plaintiff alleges that instead of being placed in a single cell, as directed by Investigator Jones, plaintiff was placed in a cell with inmate Harris. (Doc. 12, at PageID 142). Plaintiff alleges that two days later inmate Harris was in possession of plaintiff's statement and tried to use it to humiliate and intimidate plaintiff. (Doc. 12, at PageID 142). Harris allegedly learned of the statement from defendant Miller. (Doc. 12, at PageID 142, 145). Plaintiff alleges that Miller also told other inmates of plaintiff's statement. (Doc. 12, at PageID 145).

After plaintiff wrote a grievance, inmate Harris was moved out of the cell. (Doc. 12, at PageID 142). Plaintiff alleges, however, that later that week it was common knowledge that he had reported being raped by a Blood gang member. (Doc. 12, at PageID 142). Plaintiff alleges that after his statement was "leaked" he was beaten up three times and humiliated by inmates and staff. (Doc. 12, at PageID 142).

Plaintiff further alleges that Eulenburg did not place a separation on plaintiff and that the cellmate who had allegedly raped plaintiff was placed in cell directly across from plaintiff for ten days before the mistake was realized. (Doc. 12, at PageID 143). Plaintiff also asserts that Eulenburg failed to inform plaintiff of his rights under PREA, offer counseling, collect evidence, or properly train staff under PREA. (Doc. 12, at PageID 143-44).

Plaintiff alleges that in November 2019 defendant Sarwar moved inmate Harris back into plaintiff's cell. (Doc. 12, at PageID 146). Plaintiff asked defendants Combs and Sarwar to move Harris, but they refused. (Doc. 12, at PageID 145-46). Plaintiff alleges that he also spoke several times to Sarwar about the danger plaintiff was in, but Sarwar refused to transfer plaintiff. (Doc. 12, at PageID 146). Plaintiff claims that on November 10, 2019, inmate Harris assaulted

6

plaintiff and tried to rape him.  (Doc. 12, at PageID 145-46).

Plaintiff claims that on December 23, 2019, Investigator Jones informed plaintiff that his rape claims had been substantiated, but that because no evidence had been collected no charges would be brought against his assailant.  (Doc. 12, at PageID 143).  Plaintiff alleges that when Investigator Jones found out that plaintiff was in a cell directly across from his alleged assailant, the assailant was moved.  (Doc. 12, at PageID 43).  However, when the assailant found out he would be moving, he allegedly began shouting obscenities at plaintiff in front of the other inmates.  (Doc. 12, at PageID 143).

Plaintiff claims that on March 3, 2020, defendant Teague sexually and physically assaulted plaintiff in retaliation for filing a lawsuit against him and making a PREA complaint. (Doc. 12, at PageID 147).

Plaintiff states that he sent a kite to BOSC regarding his allegations of rape, the leaked statement, the attempted rape by inmate Harris, the beatings by inmates, and the assault by Teague.  (Doc. 12, at PageID 144-45, 147-48).  Plaintiff asserts that defendant John Doe of BOSC failed to transfer plaintiff to another prison.  (Doc. 12, at PageID 144-45).  Plaintiff also alleges that BOSC transferred plaintiff to WCI without a hearing.  (Doc. 12, at PageID 148).

Plaintiff alleges that defendants Chamblin and Bullock denied plaintiff access to grievances.  (Doc. 12, at PageID 146-47).

Plaintiff also sues defendant WCI "under state laws for all [he] went through" (Doc. 12, at PageID 148); defendants ODRC and ODRC Director Smith for transferring plaintiff from "MANCI" (Mansfield Correctional Institution) to WCI without a hearing (Doc. 12, at PageID 148); the "Investigators Office" at WCI for his leaked statements (Doc. 12, at PageID 148); Deputy Warden Luneke for his role in moving Harris back into plaintiff's cell; and Warden Jackson-Mitchell for having a policy of only reporting sexual assaults to "white shirts" in

violation of PREA, failing to properly train her staff, and failing to get "justice." (Doc. 12, at PageID 148-49).

Plaintiff seeks monetary damages and injunctive relief. (Doc. 12, at PageID 150).

**C.     ANALYSIS**

Liberally construed and without the benefit of briefing by the parties, the complaint is deserving of further development and may proceed at this juncture against defendants Burke, Ewen, McIntosh, Hill, and Fornier for failure to protect plaintiff from alleged rape by his cellmate in July 2019; against defendants Burke, Little, C.O. John Doe, and Fornier for denying plaintiff medical and mental-health care following his alleged rape; against defendants Eulenburg and Miller for deliberate indifference to plaintiff's safety by allegedly leaking plaintiff's confidential statement; against defendant Eulenburg for allowing plaintiff's alleged rapist to be placed in a cell directly across from plaintiff; against defendant Sarwar for deliberate indifference to plaintiff's safety by failing to transfer him following his alleged rape and the leaking of his confidential statement; against defendants Combs, Sarwar, and Luneke for failure to protect plaintiff from attack from inmate Harris in November 2019; against defendant Teague for sexual assault in March 2020; and against defendants Bach, Little and Teague for retaliation. In an abundance of caution, and based on plaintiff's allegations that he was sexually assaulted by two inmates within a four-month period and by a corrections official four months later, the complaint may also proceed at this juncture against the Warden for failure to protect and deliberate indifference on a failure-to-train theory. For the reasons stated below, however, plaintiff's remaining claims should be dismissed. *See* 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b).

First, any claim against an individual defendant in an official capacity must be dismissed to the extent that plaintiff seeks monetary damages. Absent an express waiver, a state is immune from damages suits under the Eleventh Amendment. *P.R. Aqueduct & Sewer Auth. v. Metcalf &*

8

*Eddy*, 506 U.S. 139, 144 (1993); *Edelman v. Jordan*, 415 U.S. 651, 673 (1974). The State of Ohio has not constitutionally nor statutorily waived its Eleventh Amendment immunity in the federal courts. *See Johns v. Supreme Court of Ohio*, 753 F.2d 524, 527 (6th Cir. 1985); *State of Ohio v. Madeline Marie Nursing Homes*, 694 F.2d 449, 460-62 (6th Cir. 1982). The Eleventh Amendment bar extends to actions where the state is not a named party, but where the action is essentially one for the recovery of money from the state. *Edelman*, 415 U.S. at 663. A suit against defendants in their official capacities would be a way of pleading the action against the entity of which defendants are agents. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978). Thus, actions against state officials in their official capacities are included in this bar. *Will v. Michigan Dep't. of State Police*, 491 U.S. 58, 70-71 (1989). *See also Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010) (citing *Cady v. Arenac Co.*, 574 F.3d 334, 344 (6th Cir. 2009)). Therefore, the individual defendants are immune from suit in their official capacities to the extent that plaintiff seeks monetary damages.

The amended complaint should also be dismissed against defendant WCI Investigator's Office. Title 42 U.S.C. § 1983 provides that "[e]very person who, under the color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. A state prison's investigator's office is not a "person" subject to suit under 42 U.S.C. § 1983. *See Hix v. Tenn. Dep't. of Corr.*, 196 F. App'x 350, 355-56 (6th Cir. 2006) (finding that a prison's medical department is not a person under § 1983). Therefore, defendant "Investigator's Office" should dismissed as a party to this action.

Likewise, plaintiff's claims against WCI, the ODRC, and the BOSC should be dismissed because none of these defendants are a "person" or legal entity that may be sued under 42 U.S.C. § 1983. *See, e.g., McGlone v. Warren Corr. Inst.*, No. 1:13cv126, 2013 WL 1563265, at *3 (S.D.

9

Ohio Apr. 12, 2013) (Bowman, M.J.) (Report & Recommendation) (and numerous cases cited therein) (holding that claims against a state prison and the ODRC should be dismissed at the screening stage because "neither the state prison facility nor the state corrections department is an entity capable of being sued under § 1983"), *adopted*, 2013 WL 2352743 (S.D. Ohio May 29, 2013) (Dlott, J.); *see also Hix*, 196 F. App'x at 355-56; *Rodgers v. Michigan Dep't of Corr.*, 29 F. App'x 259, 260 (6th Cir. 2002). *Cf. Will v. Michigan Dep't of State Police*, 491 U.S. 58, 63-64, 71 (1989) (holding that "neither a State nor its officials acting in their official capacities are 'persons'" who may be held liable for constitutional violations in a § 1983 action). Furthermore, as state agencies, plaintiff's claims against the ODRC and BOSC are barred by the Eleventh Amendment. *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984) ("[I]n the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment.").

Plaintiff has failed to state a plausible claim for relief against the ODRC Director. Plaintiff seeks to hold the Director liable for transferring him from MANCI to WCI without a hearing. Plaintiff claims that WCI is more restrictive and far away from his family. (Doc. 12, at PageID 148). However, plaintiff's transfer to WCI does not implicate the due process clause because, ordinarily, inmates have no constitutional right to be incarcerated in a particular institution, *Olim v. Wakinekona,* 461 U.S. 238, 245 (1983); *Meachum v. Fano,* 427 U.S. 215, 224–25 (1976); *Crosky v. Ohio Dept. of Rehab. & Corr.,* No. 2:09–cv–400, 2012 WL 748408, at *9 (S.D. Ohio Mar. 8, 2012), "or to enjoy a particular security classification." *Crosky,* 2012 WL 748408 at *9 (citing *Montanye v. Haymes,* 427 U.S. 236, 242 (1976)). *See also Workman v. Wilkinson*, 23 F. App'x 439, 440 (6th Cir. 2001) ("Even in the absence of a disciplinary conviction, a state may transfer a prisoner to a less desirable facility without implicating the Due Process Clause.") (citing *Meachum,* 427 U.S. at 224–25). Plaintiff does not allege any other

basis for liability against the Director. The Director may not be held liable under § 1983 on a theory of *respondeat superior. Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008).[4]

Similarly, plaintiff's claims against defendant John Doe of BOSC are subject to dismissal. Plaintiff alleges that he sought a transfer to another institution from this defendant following the events underlying this lawsuit, including the alleged March 2020 assault by defendant Teague. Plaintiff does not allege that he suffered additional violations of his rights following his request for transfer to this defendant. Additionally, his amended complaint indicates that he has since been transferred to another institution. *See supra* note 1. In the absence of facts supporting an inference that John Doe of BOSC "acted or failed to act despite his knowledge of a substantial risk of serious harm," plaintiff has failed to state an Eighth Amendment claim against this defendant. *See Farmer v. Brennan,* 511 U.S. 825, 842 (1994).

Plaintiff has failed to state a claim against defendants Chamblin and Bullock. Plaintiff's claims against these defendants are based the alleged denial of grievances. Such a claim does not implicate federal constitutional concerns because plaintiff has no right under the Constitution to an effective prison grievance procedure. *See, e.g., Hill v. Warden,* No. 1:12cv63, 2012 WL 1639991, at *2 (S.D. Ohio Mar. 13, 2012) (Litkovitz, M.J.) (recommending dismissal of portion of complaint complaining about "the failure of prison staff to provide [plaintiff] with inmate grievance forms and other deficiencies in the inmate grievance procedure" because "plaintiff has no federal constitutional right to an effective prison grievance procedure"), *adopted*, 2012 WL 1623565 (S.D. Ohio May 9, 2012) (Weber, J.); *Dearing v. Mahalma,* No. 1:11cv204, 2011 WL 3739029, at *7 (S.D. Ohio Aug. 24, 2011) (Barrett, J.) (holding that the plaintiff's allegations

---

[4]In the amended complaint, plaintiff also alleges that he is suing the Warden under a *respondeat superior* theory. (Doc. 12, at PageID 149). If that was the only theory under which plaintiff was proceeding against the Warden, his claims would fail. *Grinter*, 532 F.3d at 575. However, because it appears that plaintiff is also suing the Warden based on a failure-to-train theory, the undersigned is recommending that those claims proceed at this juncture.

11

referring to "his dissatisfaction with the ... investigation of [an] allegedly mishandled letter" through the prison grievance process did not state an actionable claim under 42 U.S.C. § 1983); *Williams v. Harris,* No. 1:11cv362, 2011 WL 3667438, at *3 (S.D. Ohio June 15, 2011) (Litkovitz, M.J.) (recommending dismissal of complaint against prison official responsible for responding to institutional grievances because the plaintiff had "no constitutional right to an effective grievance procedure"), *adopted*, 2011 WL 3667389 (S.D. Ohio Aug. 22, 2011) (Dlott, J.); *see also Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005) (per curiam) (and cases cited therein).

Nor has plaintiff stated a claim against any defendant under PREA because PREA does not create a private right of action. *See, e.g.*, *Montgomery v. Harper*, No. 5:14CV-P38-R, 2014 WL 4104163, at *3 (W.D. Ky. Aug. 19, 2014) ("[T]his Court concludes that the PREA creates no private right of action."). Although the Court has allowed plaintiff to go forward at this juncture on a claim that the Warden violated the Eighth Amendment by an alleged failure to train, plaintiff may not state a claim for relief based on alleged violations of PREA training requirements. *See, e.g., De'lonta v. Clarke,* No. 7:11-CV-00483, 2012 WL 4458648, at *3 (W.D. Va. Sept. 11, 2012), *aff'd sub nom. De'Lonta v. Pruitt*, 548 F. App'x 938 (4th Cir. 2013).

To the extent that plaintiff mentions the equal protection clause (*see, e.g.*, Doc. 12, at PageID 147), he has not stated a claim for the denial of equal protection. Plaintiff does not allege facts supporting an inference that plaintiff received disparate treatment, unequal protection of any law, or that distinct protection was offered to similarly situated prisoners but not to him. *See Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986). Accordingly, any equal protection claim in the amended complaint warrants dismissal.

Nor can plaintiff state a claim to relief based on an alleged improper investigation of his alleged rape. *See Diamond v. Charles*, 476 U.S. 54, 64-65 (1986); *White v. City of Toledo*, 217

12

F. Supp. 2d 838, 841 (N.D. Ohio 2002) (finding there is no "constitutional, statutory, or common law right that a private citizen has to require a public official to investigate or prosecute a crime.") (quoting *Doe v. Mayor and City Council of Pocomoke City,* 745 F. Supp. 1137, 1138 (D.Md.1990)). Plaintiff's claims that defendants failed to properly investigate his allegations should therefore be dismissed for failure to state a claim upon which relief may be granted.

Likewise, plaintiff fails to state a claim for relief for a denial of access to the courts under the First Amendment. An inmate must plead and demonstrate that the lack of legal materials or the shortcomings in the prison legal assistance program have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis v. Casey*, 518 U.S. 343, 351-53 (1996); *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). "Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline." *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005). Plaintiff fails to allege any facts showing that he suffered an actual injury in any nonfrivolous legal proceeding as a result of the alleged inadequacies of the jail facilities. Without such allegations, plaintiff's amended complaint fails to state a claim for relief for a denial of access to the courts under the First Amendment.

Finally, having concluded that plaintiff's federal constitutional claims against defendants ODRC, ODRC Director, BOSC, John Doe of BOSC, WCI, WCI Investigator's Office, Chamblin, and Bullock should be dismissed, the Court should **DECLINE to exercise supplemental jurisdiction** under 28 U.S.C. § 1367(c)(3) over any state-law claims against these defendants and **DISMISS** any such claims **without prejudice.**

Accordingly, in sum, plaintiff may proceed at this juncture against defendants Burke, Ewen, McIntosh, Hill, and Fornier for failure to protect plaintiff from alleged rape by his cellmate in July 2019; against defendants Burke, Little, C.O. John Doe, and Fornier for denying

13

plaintiff medical and mental-health care following his alleged rape; against defendants Eulenburg and Miller for deliberate indifference to plaintiff's safety by allegedly leaking plaintiff's confidential statement; against defendant Eulenburg for allowing plaintiff's alleged rapist to be placed in a cell directly across from plaintiff; against defendant Sarwar for deliberate indifference to plaintiff's safety by failing to transfer him following his alleged rape and the leaking of his confidential statement; against defendants Combs, Sarwar, and Luneke for failure to protect plaintiff from attack from inmate Harris in November 2019; against defendant Teague for sexual assault in March 2020; against defendants Bach, Little and Teague for retaliation, and, in an abundance of caution, against the Warden for failure to protect and deliberate indifference based on a failure-to-train theory. Having found that the remaining allegations in the complaint fail to state a claim upon which relief may be granted, plaintiff's remaining claims should be dismissed. *See* 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b).

However, plaintiff has failed to provide summons or U.S. Marshal forms for service of process. It is therefore **ORDERED** that plaintiff, **within thirty (30) days** of the date of this Order, submit a completed summons and U.S. Marshal form for each of defendants Burke, Ewen, McIntosh, Hill, Fornier, Little, Eulenburg, Miller, Teague, Combs, Sarwar, Bach, and Luneke.[5] Plaintiff is advised that failure to comply with this Order may result in the dismissal of this action for want of prosecution.

Before service may be issued upon the remaining John Doe defendant, plaintiff must file a motion to issue service setting forth the identity of the unidentified defendant. Plaintiff is therefore **ORDERED** to file a motion to issue service, including United States Marshal and summons forms, if and when plaintiff discovers the identity of the unnamed defendant through

---

[5] Plaintiff has previously provided a summons and United States Marshal form for the Warden. (Doc. 1).

14

discovery. Plaintiff is advised that no service will be issued on the unnamed defendant unless plaintiff complies with this Order.

## IT IS THEREFORE RECOMMENDED THAT:

1. The complaint be **DISMISSED with prejudice** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1), with the exception of plaintiff's claims against defendants Burke, Ewen, McIntosh, Hill, and Fornier for failure to protect plaintiff from alleged rape by his cellmate in July 2019; against defendants Burke, Little, C.O. John Doe, and Fornier for denying plaintiff medical and mental-health care following his alleged rape; against defendants Eulenburg and Miller for deliberate indifference to plaintiff's safety by allegedly leaking plaintiff's confidential statement; against defendant Eulenburg for allowing plaintiff's alleged rapist to be placed in a cell directly across from plaintiff; against defendant Sarwar for deliberate indifference to plaintiff's safety by failing to transfer him following his alleged rape and the leaking of his confidential statement; against defendants Combs, Sarwar, and Luneke for failure to protect plaintiff from attack from inmate Harris in November 2019; against defendant Teague for sexual assault in March 2020; against defendants Bach, Little and Teague for retaliation, and, in an abundance of caution, against the defendant Warden for failure to protect and deliberate indifference on a failure-to-train theory.

2. The Court **DECLINE to exercise supplemental jurisdiction** under 28 U.S.C. § 1367(c)(3) over any state-law claims against dismissed defendants ODRC, ODRC Director, BOSC, John Doe of BOSC, WCI, WCI Investigator's Office, Chamblin, and Bullock and **DISMISS** any such claims **without prejudice.**

3. The Court **ADOPT** the undersigned's March 30, 2020 Report and Recommendation (Doc. 10) in its entirety.

**IT IS THEREFORE ORDERED THAT:**

1. Within **thirty (30) days** of receipt of this Order, plaintiff is **ORDERED** to submit completed summons and United States Marshal forms for each of defendants Burke, Ewen, McIntosh, Hill, Fornier, Little, Eulenburg, Miller, Teague, Combs, Sarwar, Bach, and Luneke.

2. The **Clerk of Court** is **DIRECTED** to send to plaintiff a summons form and a United States Marshal form for this purpose. Upon receipt of the completed summons and United States Marshal forms, the Court shall order service of process by the United States Marshal in this case.

3. Plaintiff's motions to amend his complaint (Docs. 2, 3, 4) are **DENIED as moot**; Plaintiff's "Motion for the Court to Accept Dual Jurisdiction" (Doc. 5) is **GRANTED to the extent** consistent with 28 U.S.C. § 1367(c), the Federal Rules of Civil Procedure, and the Local Rules of this Court.

Date: June 19, 2020

*Karen L. Litkovitz*
Karen L. Litkovitz
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

MARQUEZ B. PERRY,
    Plaintiff,

vs.

WARDEN WARREN
CORRECTIONAL INSTITUTION, *et al.*,
    Defendants.

Case No. 1:20-cv-30

Black, J.
Litkovitz, M.J.

**NOTICE**

    Pursuant to Fed. R. Civ. P. 72(b), WITHIN 14 DAYS after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections WITHIN 14 DAYS after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).