# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT CINCINNATI

| | | |
|---|---|---|
| MARQUEZ B. PERRY, | : | Case No. 1:20-cv-30 |
| | : | |
| Plaintiff, | : | |
| | : | |
| | : | District Judge Algenon L. Marbley |
| vs. | : | Magistrate Judge Peter B. Silvain, Jr. |
| | : | |
| WARDEN WARREN CORRECTIONAL | : | |
| INSTITUTION, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATIONS[1]

Plaintiff Marquez B. Perry, who is currently an inmate at the Southern Ohio Correctional Facility (SOCF), filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983 alleging that Defendants violated his rights under state and federal law while he was confined at the Warren Correctional Institution (WCI).

This case is before the Court upon Defendants' Motion for Summary Judgment and exhibits (Doc. #s 87-90, 92), Plaintiff's Memorandum in Support of the Denial of Defendants' Motion for Summary Judgment (Doc. #107), Defendants' Reply (Doc. #109).[2]

## I. BACKGROUND

After Plaintiff filed an amended complaint,[3] United States Magistrate Judge Karen L. Litkovitz conducted a *sua sponte* review under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l) and concluded by Report and Recommendation that Plaintiff could proceed with his claims against

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

[2] Plaintiff subsequently filed "Notice of Verified Complaint: Notice of Inmate Grievance: and Supplemental Memorandum against Defendants' Motion for Summary Judgment" with attached exhibits (Doc. #111) and "Notice of Exhibits to Support Plaintiff Reply to Defendants' Motion for Summary Judgment" with attached exhibits (Doc. #120). Plaintiff's exhibits are duplicates of the exhibits filed by Defendants (Doc. #s 87-90, 92). The undersigned will cite to the exhibits filed by Defendants.

[3] Plaintiff's Amended Complaint was originally docketed as his Response to Order to Show Cause. (Doc. #12). After Magistrate Judge Litkovitz's initial review, it was re-docketed as his Amended Complaint. (Doc. #16).

Defendants Burke, Ewen, McIntosh, Hill, and Fournier[4] for failure to protect Plaintiff from alleged rape by his cellmate in July 2019; against Defendants Burke, Little, C.O. John Doe, and Fournier for denying Plaintiff medical and mental-health care following his alleged rape; against Defendants Eulenburg and John Doe #2[5] for deliberate indifference to Plaintiff's safety by allegedly leaking Plaintiff's confidential statement; against Defendant Eulenburg for allowing Plaintiff's alleged rapist to be placed in a cell directly across from Plaintiff; against Defendant Sarwar for deliberate indifference to Plaintiff's safety by failing to transfer him following his alleged rape and the leaking of his confidential statement; against Defendants Combs, Sarwar, and Luneke for failure to protect Plaintiff from attack from inmate Harris in November 2019; against Defendant Teague for sexual assault in March 2020; against Defendants Back,[6] Little and Teague for retaliation, and against the Defendant Warden for failure to protect and deliberate indifference on a failure-to-train theory. (Doc. #15, *PageID* #200). Magistate Judge Litkovitz recommended that all of Plaintiff's other claims be dismissed. *Id.* On July 16, 2020, the District Court adopted the Report and Recommendation. (Doc. #22).

Plaintiff's claims initially stem from his allegation that he was raped by his cellmate at WCI on July 10, 2019. (Doc. #16, *PageID* #205). Prior to the alleged rape, Plaintiff alleges that he reported to Defendants Burke, Ewen, McIntosh, Hill, and Fournier that he did not feel safe in his cell with his cellmate and requested to move cells. Specifically, when Plaintiff was moved into the cell with the inmate, Plaintiff repeatedly told Defendant Burke, his "1st shift regular," that he "felt in danger in the cell with this man and that [he] was being subject to unwanted sexual situations." *Id.* at 203; (Doc. #107, *PageID* #1776). In addition, Plaintiff went to the office of Defendant Ewen, his block sergeant, and reported that his cellmate was a "sexual predator," he

---

[4] The correct spelling is "Fournier," not "Fornier." *See* Doc. #87-9.
[5] Defendant John Doe #2 was previously identified as Defendant Miller. *See* Doc. #s 51, 75.
[6] The correct spelling is "Back," not "Bach." (Doc. #87, *PageID* #549, n. 4)

was making unwanted sexual advances, and Plaintiff "did not feel safe sleeping in the cell with this man." (Doc. #16, *PageID* #204); (Doc. #107, *PageID* #1776). Defendant Ewen asked Plaintiff if he had information or "dirt" on other inmates, and when Plaintiff responded that he did not, Defendant Ewen refused to move him. (Doc. #16, *PageID* #204). Further, Plaintiff requested a cell move from Defendant Fournier, the acting unit manager, on several occasions prior to the rape. (Doc. #16, *PageID* #206); (Doc. #107, *PageID* #1776). Plaintiff had previously sent a kite to Unit Manager Crosby requesting a move. (Doc. #16, *PageID* #206). Crosby approved the move and instructed Plaintiff to contact Defendant Fournier about the move. *Id.* However, when Plaintiff showed Defendant Fournier the kite approving the move, he did not move Plaintiff. *Id.*

On July 8, 2019, Plaintiff wrote to Defendant McIntosh in an informal complaint that he had been moved into a cell "an openly gay person" and was "tryin to get out of the cell with man due to all the probpems (sic) its (sic) gone (sic) cause (sic) …." (Doc. #87-4, *PageID* #605). Defendant McIntosh responded on July 9, 2010: "I spoke with Acting Unit Manager Fournier and he said he spoke with you today and explained the local move policy. He also stated that you understood and no problems existed…." *Id.*

On July 9, 2019, in Plaintiff's grievance to Defendant Hill, he indicated that he was in a cell with "an openly gay man which is causing me all type (sic) of problems." (Doc. #87-4, *PageID* #605). Specifically, Plaintiff wrote that "being in the cell with this openly gay man has caused the gangs to turn against me and not let me on the phone[] and to threaten me wiht (sic) violence." *Id.* On July 22, 2019, Defendant Hill denied Plaintiff's grievance. *Id.* She indicated that Plaintiff moved cells two days after he filed his informal complaint. *Id.*

On the morning after his alleged rape, Plaintiff refused to allow his cellmate back into their cell after breakfast. (Doc. #16, *PageID* #205). As a result, Plaintiff was placed in handcuffs and Defendant Little was called to his unit. *Id.* Plaintiff alleges that he told Defendants Burke, Little,

C.O. John Doe, and Fournier that he had been sexually assaulted by his cellmate. *Id.*; (Doc. #107, *PageID* #1777). They told him to return to his cell and that "somebody would see [him]." (Doc. #16, *PageID* #205). However, "this never happened." *Id.* According to Plaintiff, he never received medical or mental attention, and no evidence was collected. *Id.* at 204-07. Because this evidence was not collected, Plaintiff's rapist was not indicted. *Id.* at 205-06.

Plaintiff alleges that he was placed in the "hole" and that no one interviewed him. (Doc. #16, *PageID* #207). After a few days, Plaintiff sent a kite to Defendant Mitchell, the warden, to inform her that he needed to report a sexual assault and was being ignored. 16 at 207, 216; (Doc. #90-2, *PageID* #1159). Plaintiff alleges that instead of informing the PREA (Prison Rape Elimination Act) coordinator and sending investigators, Defendant Mitchell sent four corrections officers led by Defendant Back. (Doc. #16, *PageID* #s 207-08, 216). Defendant Back and the corrections officers lied to Plaintiff and scared him into keeping quiet. *Id.* at 208.

Plaintiff alleges that he eventually reported Defendant Back and the corrections officers to the Investigator's Office. *Id.* at 208. According to Plaintiff, this made Defendant Back "very upset," and he harassed Plaintiff and told him he would not be watching television anytime soon. *Id.* at 208; (Doc. #107, *PageID* #1777). Plaintiff claims that he later found out that his TV screen was shattered while in the custody of the captain's office. (Doc. #16, *PageID* #208). Plaintiff alleges that Defendant Little "participated in an attempt by [Defendant Back] to silence me even though I clearly told them I had [an] assault to report." *Id.* at 206.

On July 24, 2019, once Plaintiff realized that he was not going to get help from someone inside the prison, he called an "outside hotline." *Id.* at 208; (Doc. #90-2, *PageID* #1161). On July 25, 2019, the PREA investigation into Plaintiff's claim began. (Doc. #90-2, *PageID* #1128). Marty Jones, an investigator at WCI, conducted the investigation. *Id.* at 1102. As part of the investigation, Plaintiff was asked to give a confidential statement and was assured that "only them

and the warden would see it." (Doc. #16, *PageID* #209). According to Plaintiff, he gave his statement to Defendant Eulenburg, the PREA Coordinator at the time. *Id.* at 209. Jones concluded, and noted in his written report, that Plaintiff's allegations were substantiated. (Doc. #90-2, *PageID* #1138).

On July 25, 2019, Plaintiff was moved into a cell with inmate Harris. (Doc. #89-4, *PageID* #1047). Plaintiff alleges that two days after he gave his statement to Defendant Eulenburg, inmate Harris was in possession of his statement. (Doc. #16, *PageID* #209). Inmate Harris used the information from Plaintiff's statement "to try to humiliate [him] and intimidate [him] into doing sexual things to him." *Id.*

On August 1, 2019, Plaintiff filed a grievance stating that Harris knew the contents of his confidential statement and it was causing friction between them. 16 at 209; (Doc. #89-4, *PageID* #s 1047-48); *see* Doc. #87-6, *PageID* #617. Plaintiff requested that he be moved. (Doc. #89-4, *PageID* #1048). On August 2, 2019, Harris was moved to a different cell. (Doc. #89-4, *PageID* #1048). However, during that week, it was "common knowledge" that Plaintiff had been raped and snitched on a member of the "Blood gang." (Doc. #16, *PageID* #209). Plaintiff alleges that because the statement was leaked, he was beaten up three times, humiliated by inmates and staff, and assaulted by a staff member. *Id.* at 209, 212.

According to Plaintiff, the inspector investigated how the statement was leaked and determined that "it must have gotten passed down because 'people talk.'" *Id.* at 209. Additionally, an inmate told the inspector that he heard it from a C.O. *Id.* Plaintiff alleges Defendant John Doe #2 told inmate Harris and other inmates about Plaintiff's PREA statement. *Id.* at 212.

On October 28, 2019, Harris was moved back into a cell with Plaintiff. (Doc. #89-4, *PageID* #1048). Plaintiff went to Defendant Sarwal's office to tell him that he had made a mistake

and that Plaintiff was in danger. (Doc. #16, *PageID* #213); (Doc. #107, *PageID* #1778). Defendant Sarwal refused to move Plaintiff. (Doc. #16, *PageID* #213).

Plaintiff alleges that Defendant Luneke, the deputy warden, "was part of the move that landed inmate Harris back into [his] cell." (Doc. #16, *PageID* #215). More specifically, Plaintiff claims that Defendant Luneke "personally approved for Inmate [H]arris to become my cellmate after I wrote a grievance about his unwanted sexual advances." (Doc. #107, *PageID* #1778). Plaintiff told Defendant Luneke that he was in danger and asked him to transfer him. (Doc. #16, *PageID* #215-16); (Doc. #107, *PageID* #1778). He also sent him a kite. (Doc. #16, *PageID* #216); (Doc. #107, *PageID* #1778). Defendant Luneke ignored Plaintiff. (Doc. #16, *PageID* #216).

Plaintiff also went to Defendant Combs, the sergeant of his unit, and requested that either he or inmate Harris be moved. (Doc. #16, *PageID* #212); (Doc. #107, *PageID* #s 1777-78). Plaintiff informed Defendant Combs of his history with inmate Harris and that he had previously threatened Plaintiff and tried to intimidate him into sexual things. (Doc. #16, *PageID* #212). Defendant Combs refused to move Plaintiff. *Id.*

Plaintiff alleges that on November 4, 2019, inmate Harris attempted to rape Plaintiff and beat him up. (Doc. #16, *PageID* #s 209, 212-13, 216). Plaintiff reported an injury on that day to Timothy J. Trapp, a Corrections Officer at Warren Correctional Institution. (Doc. #89-7, *PageID* #1058). Trapp completed an incident report detailing the event. *Id.* In the report, Trapp noted that Plaintiff indicated that he hit his hand on the dresser and injured his hand. *Id.* Trapp observed that Plaintiff had facial injuries as well. *Id.* Both Plaintiff and inmate Harris were escorted to medical for an evaluation. *Id.* Vickey Bussey, RN, examined Plaintiff. *Id.* at 1066. He reported to her that they were fighting about PREA. *Id.* He said he did not know how his finger was scratched but that it hurt. *Id.* She cleaned his finger with saline solution and released him. *Id.* Tripp noted that after their medical evaluations, both Plaintiff and inmate Harris signed voluntary

statements indicating that the injuries were accidental and that they were willing to remain housed together. *Id.* at 1058, 1064-65. Plaintiff specifically wrote, "I'm not scared to cell with my cellmate. My head injury and hand injury was (sic) not in a fight." *Id.* at 1065. According to Tripp, inmate Harris was moved out of the Plaintiff's cell. *Id.* at 1058.

On January 7, 2020, Plaintiff completed an informal complaint regarding the alleged assault by inmate Harris. (Doc. #89-7, *PageID* #1069). Brian Baker, an investigator at Warren Correctional Institution, was assigned to investigate Plaintiff's PREA claim on January 10, 2020.[7] (Doc. #89-6, *PageID* #1052); (Doc. #89-7, *PageID* #1057). After an investigation, Baker concluded, and indicated in his report, that Plaintiff's allegation of sexual abuse was unsubstantiated. (Doc. #89-7, *PageID* #1061).

Between December 19, 2019 and December 26, 2019, Plaintiff's cell was across from the cell of the inmate who sexually assaulted him in July 2019. (Doc. #87-6, *PageID* #629). Plaintiff alleges that Defendant Eulenburg "never placed a separation on [him] and [his] rapist and as a result [his] rapist was placed directly across from [him] in Unit 3D for 10 days before they realized [their] mistake." (Doc. #16, *PageID* #s 209-10).

On December 23, 2019, Investigator Jones informed Plaintiff that his investigation was complete and he had substantiated Plaintiff's claims. (Doc. #16, *PageID* #210). However, because no evidence had been collected, the local county prosecutor refused to indict. *Id.* Plaintiff informed Investigator Jones that his rapist slept across from him, and Investigator Jones called to have him moved. *Id.* When he was moved, the inmate was "very upset" and started yelling obscenities at Plaintiff in front of other inmates. *Id.*

---

[7] Although the name of the inmate is redacted, Brian Baker's declaration identifies the inmate as Harris. (Doc. #89-6, *PageID* #1052).

According to Plaintiff, on March 4, 2020,[8] Defendant Teague entered his cell and physically and sexually assaulted. (Doc. #16, *PageID* #214); (Doc. #90-4, *PageID* #1221); (Doc. #87-6, *PageID* #632). Specifically, Defendant Teague punched and kicked him in the face and "stuck his finger or a object into my anal cavity." (Doc. #16, *PageID* #214); (Doc. #90-4, *PageID* #1221). Defendant Teague yelled, "sue this you PREA check in bitch." *Id.*

## II.   STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). Additionally, this initial burden may be satisfied by the moving party "pointing out to the court that the [non-moving party], having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Barnhart v. Pickrel Schaeffer & Ebeling Co., L.P.A.,* 12 F.3d 1382, 1389 (6th Cir. 1993).

The burden then shifts to the non-moving party, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). Here, in opposing summary judgment, the non-moving party cannot "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 586, 106 S. Ct. 1348 (1986). Indeed, unverified pleadings and self-serving affidavits alone are not enough to create an issue of fact

---

[8] Plaintiff alleges in his Complaint that this incident occurred on March 3, 2020. (Doc. #16, *PageID* #214). However, the other evidence of record, including Plaintiff's confidential statement, indicates that the alleged assault occurred on March 4, 2020. (Doc. #90-4).

sufficient to survive summary judgment. *Johnson v. Washington Cty. Career Ctr.*, 982 F. Supp. 2d 779, 788 (S.D. Ohio 2013) (Marbley, D.J.).

Finally, in ruling on a motion for summary judgment, the court is "not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091, 110 S.Ct. 1839 (1990). Thus, in determining whether a genuine issue of material fact exists on a particular issue, the court is entitled to rely upon the Rule 56 evidence specifically called to its attention by the parties. *See id*.

## III.    DISCUSSION

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. Section 1983 provides a civil cause of action for persons "who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law." *Smith v. City of Salem*, 378 F.3d 566, 576 (6th Cir. 2004). In order to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250 (1988); *Street v. Corr. Corp. of Am.,* 102 F.3d 810, 814 (6th Cir. 1996). Further, because § 1983 is a method for vindicating federal rights as opposed to a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver,* 510 U.S. 266, 271, 114 S.Ct. 807 (1994).

In this case, Plaintiff alleges that Defendants violated his constitutional rights under the First and Eighth Amendments. In response, Defendants assert that reasonable jurors could not find in Plaintiff's favor by a preponderance of the evidence and, accordingly, they are entitled to

9

summary judgment as a matter of law. (Doc. #87, *PageID* #567). The undersigned will address each of these claims in turn.

### A. Failure to Protect Claims

Under the Eighth Amendment's prohibition on cruel and unusual punishment, "prison officials have a duty … to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (citations and internal quotation marks omitted). However, "[i]t is not … every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834. A claim for violation of the duty to protect under the Eighth Amendment has objective and subjective components. *Id.* To satisfy the objective component, the plaintiff "must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* at 834. To satisfy the subjective component, the plaintiff must show that the prison official acted with "deliberate indifference" to inmate health or safety. *Id.* at 837. "An official is deliberately indifferent if he or she 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference.'" *Bishop v. Hackel*, 636 F.3d 757, 766-67 (6th Cir. 2011) (quoting *Farmer*, 511 U.S. at 837).

*Defendants McIntosh & Hill*

Plaintiff asserts that Defendants McIntosh and Hill failed to protect him from the alleged rape by his cellmate in July 2019. Specifically, Plaintiff wrote an informal complaint to Defendant McIntosh and a grievance to Defendant Hill to inform them of the problems he was having with his cellmate and the lack of help from other staff. (Doc. #16, *PageID* #205); (Doc. #107, *PageID* #1776). In his informal complaint on July 8, 2019, Plaintiff wrote that he had been moved into a cell "an openly gay person" and was "tryin to get out of the cell with man due to all the probpems

10

(sic) its (sic) gone (sic) cause (sic) ….." (Doc. #87-4, *PageID* #605). In Plaintiff's grievance on July 9, 2019, he indicated that he was in a cell with "an openly gay man which is causing me all type (sic) of problems." *Id.* He also wrote that "being in the cell with this openly gay man has caused the gangs to turn against me and not let me on the phone. and to threaten me wiht (sic) violence." *Id.*

Plaintiff cannot meet the objective element of his failure-to-protect claim because he has not shown that he was incarcerated under conditions posing a substantial risk of serious harm. In order to prove the objective component of his claim, a plaintiff must do more than allege a generalized concern for his safety and welfare. *See Reedy v. West*, 988 F.3d 907, 912-14 (6th Cir. 2021); *Mosquera v. Delgado*, No. 4:09CV1402, 2010 WL 2010973, at *4-5 (N.D. Ohio Apr. 30, 2010), *report and recommendation adopted,* No. 4:09CV1402, 2010 WL 2010969 (N.D. Ohio May 20, 2010) (inmate who alleged that he repeatedly told defendants that he feared for his health and safety due to "serious threats and conflict" with gang members did not show objective conditions posing a substantial risk because inmate identified only general conflict and failed to ask prison personnel for protection after notifying them of threat).

Plaintiff did not convey any specific threat of harm from his cellmate in his informal complaint to Defendant McIntosh or his grievance to Defendant Hill. Indeed, Plaintiff did not indicate in either that his cellmate threatened him at all. Accordingly, the undersigned does not find that Plaintiff was incarcerated under conditions posing an objectively serious risk of harm.

Even if Plaintiff could meet the objective component of his claim, there is no genuine issue of fact as to the subjective component—deliberate indifference. "An official is deliberately indifferent if he or she 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference.'" *Bishop*, 636 F.3d. at 766-67 (quoting

*Farmer*, 511 U.S. at 837). There is no evidence that Defendants McIntosh and Hill were subjectively aware of a risk to Plaintiff's health or safety. As explained above, Plaintiff did not inform Defendant McIntosh or Hill that his cellmate threatened him in his informal complaint or grievance.

Furthermore, there is no evidence in the record to suggest that Defendants McIntosh or Hill were aware of any serious threat to Plaintiff's safety. Plaintiff does not allege, and the record does not show, that Defendants McIntosh and Hill had any interactions with Plaintiff outside his informal complaint and grievance. There are no allegations that either Defendant McIntosh or Defendant Hill witnessed Plaintiff receiving threats or received any substantiation of Plaintiff's concerns.

In his declaration, Defendant McIntosh stated that "[t]here is nothing in inmate Perry's informal complaint that would lead me to believe his health and safety were in danger due to his cell assignment." (Doc. #87-3, *PageID* #604). He also explained that after receiving Plaintiff's informal complaint, he spoke to the Acting Unit Manager, Michael Fournier, and responded to Plaintiff's informal complaint. *Id.* at 603; (Doc. #87-4, *PageID* #605). In his response, Defendant McIntosh wrote that Fournier spoke to Plaintiff and explained the local move policy. (Doc. #87-4, *PageID* #605). Fournier stated that Plaintiff "understood and no problems existed." *Id.* According to Defendant McIntosh, this was the "totality of his involvement" with Plaintiff's request for a new cell assignment. *Id.* at 603.

There is no evidence that Defendant Hill saw Plaintiff's grievance before the alleged sexual assault occurred. Indeed, she did not respond to Plaintiff's grievance until July 22, 2019—thirteen days after Plaintiff's alleged sexual assault. *Id.* at 605.

Accordingly, the undersigned **RECOMMENDS** that Defendant's Motion for Summary Judgment on Plaintiff's failure-to-protect claims against Defendants McIntosh and Hill be **GRANTED.**

*Defendants Burke, Ewen, and Fournier*

Plaintiff asserts that Defendants Burke, Ewen, and Fournier failed to protect him from his cellmate. Specifically, he alleges that he repeatedly told Defendant Burke that he "felt in danger in the cell with this man and that [he] was being subject to unwanted sexual situations." (Doc. #16, *PageID* #203); (Doc. #107, *PageID* #1776). Further, he reported to Defendant Ewen that his cellmate was a "sexual predator," he was making unwanted sexual advances towards Plaintiff, and Plaintiff "did not feel safe sleeping in the cell with this man." (Doc. #16, *PageID* #204); (Doc. #107, *PageID* #1776). Finally, Plaintiff alleges that he requested a cell move from Defendant Fournier on two occasions. (Doc. #16, *PageID* #206). In his affidavit, Plaintiff stated that he spoke to Defendant Fournier several times about his cellmate threatening him and making sexual advances. (Doc. #107, *PageID* #1776).

In support of their Motion for Summary Judgment, Defendants Burke, Ewen, and Fournier submitted declarations. Defendant Burke stated that he did not recall Plaintiff requesting to be moved from his cell. (Doc. #87-1, *PageID* #587). In Defendant Ewan's declaration, he noted that Plaintiff requested a cell move because he was not comfortable sharing a cell with was a person who "was not shy about being a homosexual." (Doc. #87-2, *PageID* #600). According to Defendant Ewan, "[s]imply being uncomfortable with a cellmate – without more – does not justify an immediate cell move." *Id.* Thus, he explained to Plaintiff that he did not meet any of the criteria for requesting a new cell assignment. *Id.* Defendant Ewan noted that Plaintiff's cellmate was not categorized as a sexual predator or a potential sexual predator and Plaintiff was not categorized as a victim or potential victim. *Id.* In Defendant Fournier's declaration, he does not indicate whether

13

Plaintiff requested a cell move. (Doc. #87-9). However, he stated that if Plaintiff had told him "that he was in danger of being sexually assaulted by his cellmate or felt threatened sexually by his cellmate," he would have followed PREA protocol and immediately separated Plaintiff from his cellmate. *Id.* at 748.

In *Reedy*, the United States Court of Appeals for the Sixth Circuit addressed a prisoner's Eighth Amendment failure-to-protect claim based on a prison counselor's alleged failure to take measures to abate a brutal assault against the prisoner by his cellmate. 988 F.3d 907. In that case, Reedy, a prisoner, was assaulted by his cellmate, Hensley. *Id.* at 911. Prior to the assault, Reedy told prison counselor Michael West that Hensley had threatened him and requested to be moved. *Id.* at 909-10. In affirming the dismissal of Reedy's failure-to-protect claim, the Court concluded that "Reedy was not, objectively speaking, incarcerated under conditions posing a substantial risk of serious harm." *Id.* at 912. The Court noted that according to Reedy, his relationship with Hensley was generally good; "[p]rior to the assault, there is no evidence that Hensley ever harmed Reedy; and there was no evidence Hensley had a violent criminal history or was ever involved in a physical altercation in prison." *Id.* at 913. Further, the Court recognized that "Reedy asserted in his verified complaint that he told West 'that [he] was in fear for [his] safety due to the threats against [his] life, and to please move [him] to another cell'; testified later that his 'bunkie had threatened [him] and we needed to move or ... do something about the situation'; and simply agreed with his counsel's question about whether he 'reiterate[d] [his] fear for [his] safety.'" *Id.* However, the Court concluded, "these are conclusory statements unadorned by any supporting facts." *Id.* (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990); *Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009)).

With respect to the subjective element of the analysis, the Court likewise found Reedy's evidence lacking. The "only evidence of what West knew about Hensley and Reedy is limited to

14

a total of two conversations," Reedy's expression that Hensley had "threatened" him and Hensley's statement that he was "going to do what he's got to do" if he was not placed in a different cell.  *Id.* at 914-15.  The Court observed that "threats between inmates are common" and do not necessarily suffice to inform jail officials that there exists "a substantial risk of harm" to a prisoner. *Id.* at 915.  The Court emphasized that there was "no evidence that West was aware of any information suggesting that Hensley had a propensity for violence, had assaulted anyone, or was disciplined in prison."  *Id.* at 915.

In the present case, Plaintiff has failed to raise a genuine issue of fact as to the objective and subjective components of his failure-to-protect claim.  Plaintiff's statements to Defendants Burke, Ewen, and Fournier that his cellmate was threatening him and making sexual advances are conclusory and not supported by any other evidence of record.  *See Reedy*, 988 F.3d at 913-14 ("The purpose of summary judgment is to determine whether a material fact dispute exists for the jury to resolve, 'not to replace conclusory allegations of the complaint or answer with conclusory allegations [in] an affidavit,' verified complaint, or deposition.") (quoting *Lujan*, 497 U.S. at 888, 110 S.Ct. 3177); (citing *Alexander*, 576 F.3d at 560; *Tschappatt v. Crescent Metal Prods.*, 798 F. App'x 887, 889 (6th Cir. 2020)).  Plaintiff does not provide any additional information about when those conversations occurred, what specific information he provided Defendants Burke, Ewen, and Fournier, or how long the conversations lasted.  Thus, Plaintiff's statements fail to demonstrate facts sufficient to show a genuine issue that he was incarcerated under conditions posing a substantial risk of serious harm.

Moreover, Plaintiff's statements are insufficient to establish that Defendants Burke, Ewen, or Fournier were subjectively aware of a risk to Plaintiff's health or safety.  *See Reedy*, 988 F.3d at 914; *Schwab v. DeVormer*, No. 1:20-CV-485, 2021 WL 3553425, at *3–4 (W.D. Mich. June 2, 2021), *report and recommendation adopted,* No. 1:20-CV-485, 2021 WL 2883187 (W.D. Mich.

July 9, 2021). Plaintiff has failed to present evidence that his cellmate had a propensity for violence, had a history of assaulting inmates or staff, or had a history of misconduct, and Plaintiff "does not belong to a class of prisoners particularly vulnerable to assault." *Reedy*, 988 F.3d 907, 915 (citing *Bishop*, 636 F.3d at 761-62, 767, 771) (finding deliberate indifference based upon consultant's report regarding the vulnerability of a "small," "mentally 'slow,'" nineteen-year-old plaintiff who had been sexually abused and an official's testimony in another case that "small, youthful prisoners are especially vulnerable to sexual pressure") (citation omitted); *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (citing testimony and forms signed by defendants showing that they were aware transgender inmates were particularly at risk and that they knew that plaintiff was a transgender inmate)).

Accordingly, the undersigned **RECOMMENDS** that Defendant's Motion for Summary Judgment on Plaintiff's failure-to-protect claims against Defendants Burke, Ewen, and Fournier be **GRANTED**.

### *Defendants Combs, Sarwar, and Luneke*

Plaintiff contends that Defendants Combs, Sarwar, and Luneke failed to protect him from inmate Harris. Specifically, in his affidavit, Plaintiff asserts that he spoke to Defendant Combs in his office about the danger he was in from inmate Harris and requested that he be moved. (Doc. #16, *PageID* #212); (Doc. #107, *PageID* #s 1777-78). Plaintiff further alleged that he informed Defendant Combs of his history with inmate Harris, including that inmate Harris had previously threatened Plaintiff and tried to intimidate him into sexual things. (Doc. #16, *PageID* #212). Additionally, Plaintiff asserts that he spoke to Defendant Sarwar and sent him kites informing him of the danger he was in from inmate Harris. (Doc. #107, *PageID* #1778). Finally, Plaintiff asserts that he spoke to Defendant Luneke and sent him a kite to explain the "entire situation to him and let him know the danger I was in." *Id.* Plaintiff claims that Defendant Luneke "personally

16

approved for Inmate [H]arris to become my cellmate after I wrote a grievance about his unwanted sexual advances." *Id.*

Defendants Combs, Sarwar, and Luneke filed declarations in support of their Motion for Summary Judgment. Defendant Combs stated that he did not assign inmate Harris to cell with Plaintiff. (Doc. #89-3, *PageID* #1045). Further, he does not recall Plaintiff requesting a cell move. *Id.* Defendant Sarwar, in his declaration, explained that Plaintiff was first placed with Harris on July 25, 2019. (Doc. #89-4, *PageID* #1047). On August 1, 2019, Plaintiff filed a grievance stating that Harris knew the contents of his confidential statement and it was causing friction between them. *Id.* at 1047-48; *see* Doc. #87-6, *PageID* #617. Plaintiff requested that he be moved. (Doc. #89-4, *PageID* #1048). On August 2, 2019, Harris was moved to a different cell. *Id.* On October 28, 2019, Harris was moved into a cell with Plaintiff. *Id.* Defendant Sarwar noted that there was no separation order between Plaintiff and Harris because there was no history of violence or an investigation between them and no PREA complaint or investigation between them. *Id.* Defendant Sarwar stated that he has "no memory" of Plaintiff approaching him about inmate Harris and did not receive a kite from Plaintiff in 2019. *Id.* at 1048. Finally, in his declaration, Defendant Luneke stated that he did not assign inmate Harris as a cellmate with Plaintiff in July 2019 or October 2019. (Doc. #89-8, *PageID* #1079). However, Defendant Luneke notes he reviewed both inmates' records and "there would be nothing prohibiting them from being celled together." *Id.* They shared a cell for a brief period between late July 2019 to early August 2019 because the cell Plaintiff was supposed to be housed in had a broken lock. *Id.* They were then assigned to a cell together in late October 2019. *Id.* Defendant Luneke does not recall Plaintiff requesting a cell move. (Doc. #89-8, *PageID* #1080). Further, a review of his kite log revealed that he did not receive a kite from Plaintiff at any time in 2019 or 2020. *Id.* at 1079.

17

Plaintiff has failed to raise a genuine issue of fact as to the objective and subjective components of his failure-to-protect claim. Plaintiff's statements to Defendants Combs, Sarwar, and Luneke that Harris was a danger to him and was making sexual advances are conclusory and not supported by any other evidence of record. *See Reedy*, 988 F.3d at 913-14. Plaintiff does not provide any details regarding his conversations with Defendants. Plaintiff does not indicate when the conversations occurred or how long they lasted. Additionally, there is no record of the kites that Plaintiff stated he sent to Defendants Sarwar and Luneke. Thus, Plaintiff's statements fail to create a genuine issue that he was incarcerated under conditions posing a substantial risk of serious harm. *See Bishop*, 636 F.3d at 761-62, 766.

Moreover, Plaintiff's statements are insufficient to establish that Defendants Combs, Sarwar, and Luneke were subjectively aware of a risk to Plaintiff's health or safety. *See Reedy*, 988 F.3d at 914; *Schwab*, No. 1:20-CV-485, 2021 WL 3553425, at *3–4, *report and recommendation adopted,* No. 1:20-CV-485, 2021 WL 2883187. As noted above, Defendant Sarwar asserted that there was no separation order between Plaintiff and Harris, no history of violence, and no PREA complaint. (Doc. #89-4, *PageID* #1048). Plaintiff has presented no evidence that inmate Harris had a propensity for violence, had a history of assaulting inmates or staff, or had a history of misconduct, and Plaintiff "does not belong to a class of prisoners particularly vulnerable to assault." *Reedy*, 988 F.3d 907, 915 (citing *Bishop*, 636 F.3d at 761-62, 767, 771).

Accordingly, the undersigned **RECOMMENDS** that Defendant's Motion for Summary Judgment on Plaintiff's failure-to-protect claims against Defendants Combs, Sarwar, and Luneke be **GRANTED.**

### B. Medical Deliberate Indifference Claims

To establish a violation of his Eighth Amendment rights resulting from a denial of medical care, Plaintiff must show that prison officials acted with "deliberate indifference to [his] serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Brooks v. Celeste,* 39 F.3d 125, 127 (6th Cir. 1994). A constitutional claim for denial of medical care has objective and subjective components. *Farmer*, 511 U.S. at 834, 114 S.Ct. 1970; *Napier v. Madison Cnty.,* 238 F.3d 739, 742 (6th Cir. 2001). The objective component requires the existence of a "sufficiently serious" medical need. *Blackmore v. Kalamazoo County,* 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Fanner,* 511 U.S. at 834, 114 S.Ct. 1970; *Estelle*, 429 U.S. at 104, 97 S.Ct. 285). A medical need is "sufficiently serious" if it either "has been diagnosed by a physician as mandating treatment" or "is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gunther v. Castineta,* 561 F. App'x 497, 499 (6th Cir. 2014) (quoting *Harrison v. Ash,* 539 F.3d 510, 518 (6th Cir. 2008)).

The subjective component requires an inmate to show that prison officials had "a sufficiently culpable state of mind" in denying medical care. *Farmer,* 511 U.S. at 834, 114 S.Ct. 1970. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Gunther*, 561 F. App'x at 500 (quoting *Harrison*, 539 F.3d at 518). "Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference." *Horn v. Madison Cnty.. Fiscal Court,* 22 F.3d 653, 660 (6th Cir. 1994). In sum, to prove the subjective component, the plaintiff must show that the official: (a) subjectively knew of a risk to the prisoner's health: (b) drew the inference that a substantial risk of harm to the prisoner existed; and (c) consciously disregarded that risk. *Farmer*, 511 U.S. at 837, 114 S.Ct. 1970.

19

In the present case, Plaintiff contends that on July 11, 2019, he told Defendants Burke, Little, C.O. John Doe, and Fournier that he had been sexually assaulted by his cellmate. (Doc. #16, *PageID* #205); (Doc. #107, *PageID* #1777). They told him to return to his cell and that "somebody would see [him]." (Doc. #16, *PageID* #205). However, "this never happened." *Id.* According to Plaintiff, "[t]hey failed to take proper action and failed to get any medical attention." (Doc. #107, *PageID* #1777).

Defendants argue that Plaintiff cannot succeed on a claim of medical deliberate indifference because he received, and continues to receive, medical and mental health treatment. (Doc. #87, *PageID* #s 557-58, 575). In support, Defendants attached Plaintiff's medical records and a declaration from Meredyth McLaughlin, a healthcare administrator at Warren Correctional Institute. (Doc. #s 88-2, 88-3, 92-2). Ms. McLaughlin explained that Plaintiff was going to be placed in restrictive housing on July 11, 2019, because he refused to allow his cellmate into his cell. (Doc. #88-2, *PageID* #832). However, before an inmate is placed in restrictive housing, the inmate must undergo mental health screening. *Id.* Psychiatric assistant Wacus Harrison screened Plaintiff on July 11, 2019. *Id.*; (Doc. #88-3, *PageID* #s 861-62). In response to Mr. Harrison's questions, Plaintiff reported that he had not been physically or sexually assaulted and did not have a mental health concern. (Doc. #88-3, *PageID* #s 861). Mr. Harrison noted that Plaintiff's behavior and appearance were "[n]ormal for TPU." *Id.* Furthermore, in accordance with ODRC policy, Drew Ireland, LPCC, conducted a mental health assessment on July 18, 2019. *Id.* at 858. This assessment was conducted out-of-cell, face-to-face, and in an area that provides confidentiality. *Id.* Mr. Ireland indicated that Plaintiff's appearance, motor behavior, affect, and mood were within normal limits; his thought process was undisturbed; his thought content was congruent; and his insight and judgment were good. *Id.* Mr. Ireland concluded that Plaintiff was currently stable and that "[n]o mental health distress or decompensation assessed or reported." *Id.*

20

On July 25, 2019, after the PREA investigation began, Plaintiff was examined by Natasha Arentz, CNP. (Doc. #92-2, *PageID* #1526-26). Plaintiff reported that he had been sexually assaulted on July 10, 2019. *Id.* at 1526. He denied pain or injury. *Id.* Upon examination, Ms. Arentz noted no evidence of trauma to Plaintiff's upper extremities, lower extremities, torso, back, head, neck, or face. *Id.* William Harlan, M.D., also examined Plaintiff on July 25, 2019. (Doc. #90-2, *PageID* #1125-26). Plaintiff reported that he had a little rectal bleeding after he was sexually assaulted by his cellmate. *Id.* at 1125. Dr. Harlan noted no evidence of trauma to Plaintiff's head, face, chest, abdomen, back, or extremities. *Id.* Additionally, a rectal exam revealed no evidence of tears, bleeding, or discharge. *Id.*

Although Plaintiff claims that Defendants denied him mental-health treatment, the evidence of record establishes that Plaintiff received mental-health screening the same day he reported the sexual assault to Defendants and underwent a mental-health assessment one week later. (Doc. #88-3, *PageID* #s 858, 861-62).

The evidence fails to create a genuine issue about whether Defendants Burke, Little, C.O. John Doe, and Fournier were deliberately indifferent to Plaintiff's mental-heath treatment. *See Arflack v. Cnty. of Henderson*, 412 F. App'x 829, 832-33 (6th Cir. 2011) (affirming grant of summary judgment to defendant prison officials where prisoner's medical records showed medical personnel treated and examined prisoner); *Apanovitch v. Wilkinson,* 32 F. App'x 704, 707 (6th Cir. 2002) (affirming grant of summary judgment to defendant prison officials where prisoner's medical records showed that prisoner received follow-up care and medication, as such a claim "amounts to a difference of opinion between [the prisoner] and the prison health care providers and a dispute over the adequacy of his treatment").

Although Defendants assert that Plaintiff also received, and continues to receive, medical care, the evidence shows that he was not examined until July 25, 2019. (Doc. #92-2, *PageID*

#1526).  Thus, the analysis turns on whether there is a genuine issue of material fact regarding the objective and subjective components of Plaintiff's claim.

As set forth above, to satisfy the objective component of an Eighth Amendment claim, the plaintiff must allege that the medical need at issue is "sufficiently serious." *Farmer,* 511 U.S. at 834, 114 S.Ct. 1970.  "A serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Baynes v. Cleland*, 799 F.3d 600, 618 (6th Cir. 2015) (quoting *Harrison,* 539 F.3d at 518).  Plaintiff does not assert, and the evidence does not show, that a physician diagnosed a serious medical need mandating treatment.  Thus, this inquiry turns to whether Plaintiff's allegation of sexual assault indicates a serious medical need so obvious that even a lay person would recognize the necessity for a doctor's treatment.

Plaintiff asserts that he reported to Defendants he was sexually assaulted—not that he was injured or the extent of those injuries.  *See Gennoe v. Washburn*, No. 3:19-CV-00478, 2021 WL 3130834, at *12 (M.D. Tenn. July 23, 2021) ("The term 'sexual assault' covers a wide spectrum of unwanted sexual conduct, not all of it violent or likely to result in physical harm."); *Cf. Myers v. Montgomery Cnty. Bd. of Comm'rs*, No. 3:18-CV-00409, 2019 WL 2567748, at *8 (S.D. Ohio June 21, 2019) ("The Court finds that Myers' allegations that she was raped, suffered physical injuries caused by the rape, and then placed in a cell meet this component.") (citing *Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996)) (internal citations omitted).  Plaintiff does not allege he was injured, only that he did not receive medical care and that no evidence was collected. Defendant Burke, in his declaration, stated that on the morning of July 11, 2019, he did not see any marks, bruises, or cuts on Plaintiff.  (Doc. #87-1, *PageID* #587).  Although Plaintiff's allegations of sexual assault are undoubtedly serious, he has failed to create a genuine issue of material fact regarding the existence or obviousness of his serious injury.

22

Accordingly, the undersigned **RECOMMENDS** that Defendant's Motion for Summary Judgment on Plaintiff's Eighth Amendment denial of medical care claims against Defendants Burke, Little, C.O. John Doe, and Fournier be **GRANTED.**

### C.  Deliberate Indifference to Plaintiff's Safety

Plaintiff asserts that Defendants Eulenburg and John Doe #2 were deliberately indifferent to his safety by leaking Plaintiff's confidential statement.

In July 2021, Magistrate Judge Litkovitz granted Plaintiff's Motion to Designate Defendant Miller as John Doe #2.  (Doc. #75).  She instructed Plaintiff to file a motion requesting service of process on this Defendant if and when he discovered John Doe #2's identity.  *Id.*  Since that time, Plaintiff has not identified John Doe #2.  He has neither served John Doe #2 nor explained his failure to do so.  Consequently, "[a]n appropriate disposition of the claims against the unnamed defendants is an order dismissing them without prejudice, so that Plaintiff's ability to bring an action within the limitations period is preserved, should he later learn their identities." *Dittmer v. Corizon Health, Inc.*, No. 20-CV-12147, 2021 WL 243009, at *12 (E.D. Mich. Jan. 25, 2021) (quoting *Winburn v. Davis*, No. 08-14996, 2009 WL 3004555, at *8 (E.D. Mich. Sept. 16, 2009) (internal quotation marks omitted); (citing *McPherson v. Caruso*, No. 2:09-CV-11766, 2010 WL 846856, at *6 (E.D. Mich. Mar. 5, 2010) (dismissing without prejudice prisoner's § 1983 claims against John Doe defendants)).

Accordingly, the undersigned **RECOMMENDS** that Plaintiff's claim against John Doe #2 be **DISMISSED**.

Plaintiff alleges that he gave his confidential statement concerning the sexual assault by his cellmate to Defendant Eulenburg.  (Doc. #16, *PageID* #209).  Two days later, his cellmate, inmate Harris, was in possession of his statement.  *Id.*  Plaintiff asserts that Defendant Eulenburg "allowed my confidential statements [taken] in her presence to become known to unauthorized

persons." (Doc. #107, *PageID* #1777). According to Plaintiff, the inspector investigated how the statement was leaked and determined that "it must have gotten passed down because 'people talk.'" (Doc. #16, *PageID* #209). Additionally, an inmate told the inspector that he heard it from a C.O. *Id.* at 209. Plaintiff alleges that because the statement was leaked, he was beaten up three times, humiliated by inmates and staff, and assaulted by a staff member. *Id.* at 209, 212; (Doc. #107, *PageID* #1780).

In her declaration, Defendant Eulenburg indicates that Plaintiff gave his statement to Investigator Marty Jones out of her presence. (Doc. #90-6, *PageID* #1237). She asserts that she did not speak to any inmate or third party about the contents of Plaintiff's statement. *Id.*

To establish liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, Plaintiff must show that the prison officials acted with "deliberate indifference" to a substantial risk. *Farmer,* 511 U.S. at 834; *Woods v. Lecureux,* 110 F.3d 1215, 1222 (6th Cir. 1997); *Curry v. Scott,* 249 F.3d 493, 506 (6th Cir. 2001). "Lack of due care for a prisoner's safety by prison officials is insufficient to support a claim of an Eighth Amendment violation." *Gibson v. Foltz,* 963 F .2d 851, 853 (6th Cir. 1992).

Plaintiff does not explain how Defendant Eulenburg "allowed" his statement to be leaked to others. Furthermore, there is a conflict between Plaintiff's allegation that Defendant Eulenburg leaked Plaintiff's confidential statement and his allegation that another inmate heard the contents of his statement from a C.O. This conflict is not resolved or explained by Plaintiff in his affidavit. At best, Plaintiff claims that Defendant Eulenburg was negligent in allowing Plaintiff's statement to be leaked. Allegations of negligence fall short of the deliberate indifference required to state an Eighth Amendment claim. *See Farmer*, 511 U.S. at 835 (holding that an Eighth Amendment violation requires a "state of mind more blameworthy than negligence").

24

Additionally, to state a claim for deliberate indifference under the Eighth Amendment, there must be some resulting harm stemming from a prison official's statements about a prisoner. *See Thompson v. Mich. Dep't of Corr.,* 25 F. App'x 357, 359 (6th Cir. 2002) (affirming district court's dismissal where "[plaintiff's] claim that he was endangered by being labeled a snitch was unsupported by any allegation of resultant harm"); *Gibbs v. Ball,* No. 07–CV–15462–DT, 2009 WL 331604, at *4 (E.D. Mich. Feb. 11, 2009) (no Eighth Amendment violation where plaintiff was labeled a "rat," but did not show actual physical injury). Although Plaintiff asserts that he was beaten up by other inmates and assaulted by staff as result of his statement being leaked, Plaintiff does not allege, and the record does not show, that he sustained any injuries.

Plaintiff also asserts that Defendant Eulenburg, "by her negligence allowed my rapist to be housed in 3d with me where he verbally abused me." (Doc. #107, *PageID* #1777). However, negligence "is not enough to establish a violation of Plaintiff's constitutional rights." *Young v. Campbell Cnty.,* 846 F. App'x 314, 323 (6th Cir. 2021) (citing *Farmer,* 511 U.S. at 835) ("Eighth Amendment liability requires 'more than ordinary lack of due care for the prisoner's interests or safety.'") (quoting *Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)).

Accordingly, the undersigned **RECOMMENDS** that Defendant's Motion for Summary Judgment on Plaintiff's failure-to-protect claims against Defendant Eulenburg be **GRANTED**.

### D. Retaliation

Retaliation based upon a prisoner's exercise of his constitutional rights violates the Constitution. *See Thaddeus–X v. Blatter,* 175 F.3d 378, 394 (6th Cir. 1999). To state a retaliation claim, a plaintiff must allege three elements: (1) that he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct. *Id.*

*Defendants Back & Little*

With regard to the first element, Plaintiff asserts that Defendant Back retaliated against him because Plaintiff reported him and other corrections officers to the investigator's office or captain's office. (Doc. #16, *PageID* #208); (Doc. #107, *PageID* #1777). Plaintiff alleges that Defendant Little also retaliated against him for reporting him. 16 at 206. Prison inmates have a protected First Amendment "right to file grievances against prison officials on his own behalf." *Maben v. Thelen*, 887 F.3d 252, 264 (6th Cir. 2018); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000) ("An inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf."); *see also Clark v. Johnston*, 413 F. App'x 804, 814 (6th Cir. 2011) (recognizing that inmates enjoy a First Amendment right to file grievances against prison staff). Accordingly, Plaintiff's conduct is sufficient to establish the first element of a retaliation claim.

The second element that Plaintiff must establish for his retaliation claim is that the defendants took an adverse action against him. *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (citing *Thaddeus–X*, 175 F.3d at 396). "[A]n adverse action is one that would 'deter a person of ordinary firmness' from the exercise of the right at stake." *Thaddeus–X*, 175 F.3d at 396. However, "some adverse actions are so *de minimis* that they do not rise to the level of a constitutionally cognizable injury." *Maben*, 887 F.3d at 266 (citing *Thaddeus–X*, 175 F.3d at 396). "[T]his threshold is intended to weed out only inconsequential actions, and is not a means whereby solely egregious retaliatory acts are allowed to proceed past summary judgment." *Thaddeus–X*, 175 F.3d at 396. Indeed, "unless the claimed retaliatory action is truly 'inconsequential,' the plaintiff's claim should go to the jury." *Bell*, 308 F.3d at 603. (citing *Thaddeus–X*, 175 F.3d at 398).

26

Plaintiff identifies two events by Defendant Back that he believes to constitute adverse action. First, Plaintiff asserts that Defendant Back harassed him. (Doc. #16, *PageID* #208); (Doc. #107, *PageID* #1777). Second, Plaintiff asserts that Defendant Back shattered his television. *Id.*

In some circumstances, harassment by corrections officers can constitute adverse action. For example, "a pattern of harassment by corrections officers that included 'physical threats' would be sufficient to deter a prisoner of ordinary firmness from engaging in protected conduct." *Parker v. Reddin*, No. 20-1106, 2020 WL 8415084, at *5 (6th Cir. Aug. 5, 2020) (citing *Thaddeus-X*, 175 F.3d at 398). Furthermore, "even harassment that is 'trivial in detail' can be 'substantial in gross,' and thus sufficient to amount to an adverse action." *Id.* (quoting *Thaddeus-X*, 175 F.3d at 398); (citing *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 563 (6th Cir. 1999) (holding, in the employment discrimination context, that "where individual instances of sexual harassment do not on their own create a hostile environment, the accumulated effect of such incidents may result in a Title VII violation")).

Although Plaintiff asserts that Defendant Back harassed him, he does not provide any additional details about the harassment. He does not indicate what Defendant Back said or did to him nor does he specify how often the alleged harassment occurred. He has not presented any evidence that Defendant Back threatened him. Without more, the undersigned cannot conclude that the alleged harassment amounted to adverse action.

The undersigned finds that damage to Plaintiff's television could rise to the level of adverse action and deter a prisoner of "ordinary firmness" from continuing to file grievances. *See Bell v. Johnson*, 308 F.3d 594, 606-07 (6th Cir. 2002) (cell search and confiscation of legal papers and medical snacks was sufficient to establish adverse action); *Clark*, 413 F. App'x at 814-15 ("Because deprivation of personal and legal property can be considered an adverse action, Clark adequately pleaded facts and allegations sufficient to establish the second element of this

retaliation claim."); *McCaskill v. Dettloff*, No. 11-12824, 2012 WL 4177034, at \*4 (E.D. Mich. July 13, 2012), *report and recommendation adopted,* No. 2:11-CV-12824, 2012 WL 4165656 (E.D. Mich. Sept. 18, 2012) ("Thus, the breaking of plaintiff's MP3 player can also constitute adverse conduct.").

Defendants, however, contend that the evidence does not support Plaintiff's claim that his television was broken. In support, they provided a declaration from Isaac Bullock, an Institutional Inspector at Warren Correctional Institution; the contraband log; and Plaintiff's complaint, grievance, and appeal regarding the television. (Doc. #92-1, *PageID* #1253); (Doc. #89-10, *PageID* #1083-85). In his declaration, Bullock states that Plaintiff's television was taken as contraband on July 10, 2019 because Plaintiff was in LPH housing and was not permitted to have a television. (Doc. #92-1, *PageID* #1253). The television was stored in the Major's vault in accordance with policy until it was returned to Plaintiff on August 9, 2019. *Id*. According to Bullock, the television would not have been issued back to Plaintiff if it was not in working order. *Id*. The contraband log indicates that when the television was taken, it worked. (Doc. #89-10, *PageID* #1085). On August 21, 2019, Plaintiff wrote an appeal indicating that when he received his television, it was broken. (Doc. #89-10, *PageID* #1083). He noted that his contraband receipt indicates that his television was working when it was taken. *Id*. Further, although he was given another television, it was also broken. *Id.*

Construing the evidence in the light most favorable to Plaintiff, the undersigned finds that there is a genuine issue of material fact regarding whether the television was broken. However, there is no evidence in the record that Defendant Back broke Plaintiff's television. *See Heyerman v. Cty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012) ("Persons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior."). The contraband log indicates that Defendant Burke confiscated the television and Defendant Ewen

removed the television from the vault.  (Doc. #89-10, *PageID* #1085).  Because Plaintiff has not established that Defendant Back broke his television, Plaintiff's retaliation claim fails.

Plaintiff does not assert that Defendant Little took adverse action against him.  At best, he alleges that Defendant Little assisted Defendant Back in attempting to silence Plaintiff.  (Doc. #16, *PageID* #206).  However, to the extent Defendant Little did assist Defendant Back, this conduct occurred before Plaintiff reported Defendants to the investigator's officer or captain's office.  Thus, Plaintiff has not established that Defendant Little took adverse action against him, and his claim for retaliation against Defendant Little fails.

Accordingly, the undersigned **RECOMMENDS** that Defendant's Motion for Summary Judgment on Plaintiff's retaliation claims against Defendants Back and Little be **GRANTED**.

*Defendant Teague*

Plaintiff asserts that on March 3, 2020, Defendant Teague entered his cell and physically and sexually assaulted him in retaliation for filing a lawsuit and making a PREA complaint.  (Doc. #16, *PageID* #214); (Doc. #107, *PageID* #1778).  In his affidavit, Plaintiff asserts that Defendant Teague was "very upset I sued his colleagues and was very upset I filed PREA."  (Doc. #107, *PageID* #1778).

At the time of the alleged assault by Defendant Teague, Plaintiff had filed two PREA complaints.  First, he filed a PREA complaint against his then cellmate on July 25, 2019.  (Doc. #90-2, *PageID* #1138).  The investigation was completed on December 26, 2019.  *Id.*  Second, he filed a PREA complaint against a different cellmate on January 10, 2020.  (Doc. #89-7, *PageID* #1061).  That investigation concluded on February 26, 2020.  *Id.*  Plaintiff does not specify which PREA complaint he refers to in his claim against Defendant Teague.

Plaintiff similarly does not specifically identify the lawsuit to which he refers.  Defendants assume that Plaintiff is referring to the informal complaint against Defendant Teague, not the

Complaint in this lawsuit. Defendant Teague was not served with a summons and copy of the complaint until October 29, 2020—seven months after he allegedly assaulted Plaintiff. (Doc. #87, *PageID* #563) (citing Doc. #43, *PageID* #377). Defendant Teague asserts that he could not retaliate against Plaintiff for an act he had not yet committed. *Id.*

Plaintiff specifically states that Defendant Teague retaliated against him for suing his colleagues and filing his lawsuit. Accordingly, the undersigned will not assume that Plaintiff referred to an informal complaint.

With regard to the first retaliation element, filing a PREA complaint qualifies as protected conduct. "The pursuit of a prison grievance—including, presumably, a complaint under PREA—is protected conduct, so long as the grievance is not frivolous." *Jackson v. Wicking*, No. 3:20-CV-00249, 2020 WL 6874963, at *3 (M.D. Tenn. Nov. 23, 2020) (citing *Gennoe*, No. 3:19-cv-00478, 2019 WL 5693929, at *6; *Herron*, 203 F.3d at 415); *see Treadwell v. King*, No. 2:20-CV-10280, 2020 WL 815589, at *2 (E.D. Mich. Feb. 19, 2020) (finding nonfrivolous PREA filing to be protected conduct)). Filing a lawsuit likewise constitutes protected conduct. *Bell*, 308 F.3d at 607 ("protected conduct, for the purposes of a First Amendment retaliation claim, encompasses a prisoner's efforts to access the courts in direct appeals, habeas corpus actions, and civil rights claims."); *see also Thaddeus–X,* 175 F.3d at 391.

Turning to the second element, Plaintiff asserts that Defendant Teague's physical and sexual assault constitutes adverse actions. The undersigned finds that the alleged assaults constitute adverse actions because they would deter a person of ordinary firmness from filing PREA complaints and lawsuits and, therefore, the second element is met. *See Cook v. Greenleaf Twp.*, No. 16-CV-14060, 2018 WL 2219642, at *5 (E.D. Mich. May 15, 2018) ("Where Plaintiffs have provided evidence of an actual assault and battery, there can be no doubt that they have established a question of fact regarding whether Keller engaged in adverse actions against them.).

The third and last prong of a retaliation claim is causation. Under the third element, "the subjective motivation of the defendants is at issue." *Thaddeus-X*, 175 F.3d at 399. Notably, "conclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state ... a claim under § 1983.'" *Harbin–Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987).

Plaintiff asserts that Defendant Teague retaliated against him because he filed a PREA complaint and a lawsuit. There is no evidence to suggest that because Plaintiff filed a PREA complaint (against another inmate), Defendant Teague possessed a retaliatory motive to assault Plaintiff. *See Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("His claims rely solely on the assumption that because he filed grievances against the defendants and some time later they took actions against him, they had improper motives. Lewis's bare allegations of malice on the defendants' parts are not enough to establish retaliation claims against them.") (citing *Crawford–El v. Britton,* 523 U.S. 574, 588, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998); *Thaddeus–X,* 175 F.3d at 399).

Likewise, apart from his conclusory allegations that he was retaliated against for filing a lawsuit, Plaintiff's Complaint and affidavit otherwise include no particular factual allegations suggesting that Defendant Teague was motivated by protected conduct. *See Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) ("Conclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotation marks and citations omitted). Indeed, at the time of the alleged assault, there is no evidence that Defendant Teague was aware of this lawsuit. Although Plaintiff first filed his Motion for Leave to Proceed *in forma pauperis* (Doc. #1) on January 10, 2020, Magistrate Judge Karen L. Litkovitz

did not order service until June 23, 2020—more than three months after Defendant Teague's alleged assault. (Doc. #17).

Therefore, viewing all the evidence in the best light for Plaintiff, he has not shown the existence of a genuine dispute as to any material fact with respect to the third element of his retaliation claim against Defendant Teague.

Accordingly, the undersigned **RECOMMENDS** that Defendant's Motion for Summary Judgment on Plaintiff's retaliation claims against Defendant Teague be **GRANTED**.

### E. Warden

Plaintiff asserts that the warden, Defendant Wanza Jackson Mitchell failed to protect him and was deliberately indifferent. (Doc. #107, *PageID* #1780). In his Complaint, Plaintiff explained that he sent a kite to Defendant Mitchell, informing her that he had been sexually assaulted. (Doc. #16, *PageID* #216). She did not inform the PREA coordinator or institutional investigators. *Id.* Instead, she sent Defendant Back and four corrections officers. *Id.* at 208. According to Plaintiff, her policy of only reporting sexual assaults to "white shirts" is contrary to the PREA. *Id.* at 216. He alleged in his Complaint that she "failed to properly train all the officials named herein who are in her prison." (Doc. #107, *PageID* #1780). Plaintiff asserts that Defendant Mitchell's failure to properly train her staff violated his Eighth Amendment rights. *Id.* at 1780.[9]

To hold a supervisory official personally liable under § 1983, a plaintiff must demonstrate that the official actively engaged in some unconstitutional behavior. *Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S. Ct. 1937, 1948, 173 L. Ed. 2d 868 (2009) ("Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Heyerman*, 680 F.3d

---

[9] In her initial screening of Plaintiff's Complaint, Magistrate Judge Litkovitz concluded, "In an abundance of caution, and based on Plaintiff's allegations that he was sexually assaulted by two inmates within a four-month period and by a corrections official four months later, the complaint may also proceed at this juncture against the Warden for failure to protect and deliberate indifference on a failure-to-train theory." (Doc. #15, *PageID* #193).

at 647 ("Persons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior."). This means "the supervisor must have abdicated his specific job responsibility, with the '*active performance* of the supervisor's individual job function ... directly resulting in the constitutional injury.'" *Winkler v. Madison Cnty.*, 893 F.3d 877, 898-99 (6th Cir. 2018) (quoting *Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006). Personal involvement requires "at a minimum" that a state actor "at least implicitly authorized, approved, or knowingly acquiesced" to the underlying constitutional violation. *Graves v. Malone*, 810 F. App'x 414, 420 (6th Cir. 2020) (quotation omitted); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) ("At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending subordinate."). Similarly, a supervisor's failure to act, without more, is insufficient to establish supervisory liability. *See Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016) ("[A] mere failure to act will not suffice to establish supervisory liability.") (citations omitted).

Plaintiff's broad assertion that Defendant Mitchell failed to properly train her staff is insufficient to state an Eighth Amendment claim against her in her individual capacity based on a failure-to-train theory. Plaintiff has not alleged that Defendant Mitchell encouraged any instance of misconduct related to Plaintiff or was otherwise directly involved in it. Further, Plaintiff has not established that Defendant Mitchell "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct" of any Defendant. *Bellamy*, 729 F.2d at 421.

To the extent Plaintiff contends that Defendant Mitchell violated his Eighth Amendment rights based on violations of PREA training requirements, his claim fails. As Magistrate Judge Litkovitz observed, PREA does not create a private right of action. (Doc. #15, *PageID* #197) (citing *Montgomery v. Harper*, No. 5:14CV-P38-R, 2014 WL 4104163, at *3 (W.D. Ky. Aug. 19, 2014)).

33

Accordingly, the undersigned **RECOMMENDS** that Defendant's Motion for Summary Judgment on Plaintiff's failure to train and failure to protect claims against Defendant Mitchell be **GRANTED**.

### F.  Sexual Assault

Plaintiff contends that his Eighth Amendment rights were violated when he was physically and sexually assaulted by Defendant Teague. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.  Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency."  *Rhodes v. Chapman*, 452 U.S. 337, 346, 101 S.Ct. 2392 (1981).  Thus, the Eighth Amendment prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).

In order to prevail on an Eighth Amendment claim, a plaintiff must satisfy both objective and subjective components: that the harm was "sufficiently serious" and that the official acted with a "sufficiently culpable state of mind," respectively.  *See Rafferty v. Trumbull Cnty.*, 915 F.3d 1087, 1094 (6th Cir. 2019) (quoting *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011); *Farmer*, 511 U.S. at 834, 114 S.Ct. 1970).  With regard to the objective prong, "[f]ederal courts have long held that sexual abuse is sufficiently serious to violate the Eighth Amendment .... This is true whether the sexual abuse is perpetrated by other inmates or by guards."  *Rafferty*, 915 at 1095 (citing *Farmer*, 511 U.S. at 848-49 (discussing inmate abuse); *Washington v. Hively*, 695 F.3d 641, 642 (7th Cir. 2012) (discussing abuse by guards).  However, such allegations must be "sufficiently serious" to implicate the constitution. *Id*. "'[I]solated, brief, and not severe' instances of sexual harassment do not give rise to Eighth Amendment violations." *Id*. at 1095 (quoting *Jackson v. Madery*, 158 F. App'x 656, 662 (6th Cir. 2005), *abrogated on other grounds by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018)).  To satisfy the subjective prong, an officer who cannot

"conceivably offer a legitimate penological justification" for his actions has acted with the requisite deliberate indifference or malice. *See Rafferty*, 915 F.3d at 1096.

Here, Plaintiff has alleged that Defendant Teague entered his cell and physically and sexually assaulted him. (Doc. #16, *PageID* #214). Specifically, Defendant Teague punched and kicked him in the face and "stuck his finger or a object into my anal cavity." *Id.* He yelled, "sue this you PREA check in bitch." *Id.* Plaintiff's allegations are supported by his confidential statement from March 6, 2020. (Doc. #90-4, *PageID* #1221). Plaintiff's statement mirrors his allegations. This alleged conduct was not merely "isolated, brief, and not severe."

Defendants assert that Plaintiff's claims against Defendant Teague are not supported by the acts and investigation of his PREA complaint. (Doc. #87, *PageID* #563). In support, they point to Defendant Teague's declaration. He stated that he entered Plaintiff's cell on March 4, 2020, because Plaintiff refused to leave his cell and attempted to "board up" his cell window. (Doc. #90-5, *PageID* #1237-38). Upon entering the cell, Defendant Teague placed Plaintiff in restraints and removed him. *Id.* Defendant Teague denies physically or sexually assaulting Plaintiff. *Id.* He noted that Lt. Kendrick, CO O'Connor, and CO Herzog all witnessed the interaction. *Id.* In their declarations, CO O'Connor, and CO Herzog assert that Defendant Teague did not use force on Plaintiff. *Id.* at 1239-42. Defendants also point to the declaration of Brian Baker, who was assigned to investigate Plaintiff's PREA complaint, and the PREA investigation report. (Doc. #90-3, *PageID* #1206); (Doc. #90-4). Baker concluded that Plaintiff's allegations were unsubstantiated. (Doc. #90-3, *PageID* #1206); (Doc. #90-4, *PageID* #1213).

Although Defendants have presented evidence that conflicts with Plaintiff's claims, the undersigned finds that, when examining the evidence in the light most favorable to Plaintiff, Plaintiff has raised a genuine issue of material fact that he has suffered a sufficiently serious harm.

Further, Defendant Teague has offered no legitimate penological justification for the sexual assault.

Accordingly, the undersigned **RECOMMENDS** that Defendant's Motion for Summary Judgment on Plaintiff's sexual assault claim against Defendants Teague be **DENIED**.

### G. Qualified Immunity

Defendants also contend that they are entitled to summary judgment on the issue of qualified immunity for Plaintiff's claims of deliberate indifference under a failure-to-protect theory and as to his medical and mental health care. (Doc. #87, *PageID* #s 583-84). Specifically, Defendants assert, "even accepting Plaintiff's allegations as true, he has not adequately alleged a claim of deliberate indifference under a failure to protect theory, not as to his medical and mental health care, that rise to the level of constitutional violations." *Id.* at 584. The undersigned construes this statement as limiting Defendants' argument on qualified immunity to the failure-to-protect claims against Defendants McIntosh, Hill, Burke, Ewen, Fournier, Combs, Sarwar, Luneke, and Mitchell; the deliberate indifference claims against Defendant Eulenburg; and the medical deliberate indifference claims against Defendants Burke, Little, C.O. John Doe, and Fournier.[10]

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982). In so doing, "qualified immunity balances two important interests—the need to hold

---

[10] Defendants also assert that "none of the Defendants would believe that their actions violated a clearly established right …." (Doc. #87, *PageID* #584). To the extent that Defendants are arguing that they are all entitled to qualified immunity on all of the remaining claims, the undersigned finds Defendants' conclusory statement to be insufficient and, therefore, waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones.").

public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808 (2009).

A governmental official is entitled to immunity if the facts alleged do not make out a violation of a constitutional right, or if the alleged constitutional right was not clearly established at the time of the defendant's alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808 (2009). Additionally, while a defendant bears the initial burden of pleading the defense of qualified immunity, it is the plaintiff who "bears the ultimate burden of proof to show that [government officials] are not entitled to qualified immunity." *Cockrell v. City of Cincinnati*, 468 F. App'x 491, 494 (6th Cir. 2012) (*quoting Garretson v. City of Madison Heights*, 407 F.3d 789, 798 (6th Cir. 2005)).

Defendants maintain that they are entitled to qualified immunity on some of Plaintiff's claims. (Doc. #87, *PageID* #584). Thus, the burden shifts to Plaintiff to establish that Defendants are not entitled to this defense. However, as explained above, Plaintiff has failed to demonstrate that his constitutional rights have been violated, even when viewed in the light most favorable to him. As such, Plaintiff is unable to carry his burden of to show that Defendants are not entitled to qualified immunity.

Accordingly, the undersigned **RECOMMENDS** that the Court find that Defendants McIntosh, Hill, Burke, Ewen, Fournier, Combs, Sarwar, Luneke, Mitchell, Eulenburg, Burke, Little, C.O. John Doe, and Fournier are immune from Plaintiff's failure-to-protect claims, deliberate indifference claims, and medical deliberate indifference claims. Therefore, these Defendants are entitled to summary judgment as a matter of law.

## IV. CONCLUSION

For all the foregoing reasons, the undersigned **RECOMMENDS** that:

1.  Defendants' Motion for Summary Judgment (Doc. #87) be **GRANTED**, in part, as to all claims against Defendants Burke, Ewen, McIntosh, Hill, Little, Fournier, C.O. John Doe, Eulenburg, Combs, Sarwar, Luneke, Back, and Mitchell and as to Plaintiff's retaliation claim against Defendant Teague, and **DENIED**, in part, as to Plaintiff's sexual assault claim against Defendant Teague; and

2.  Plaintiff's claim against John Doe #2 be **DISMISSED** without prejudice.


August 16, 2022                                          *s/Peter B. Silvain, Jr.*
                                                          Peter B. Silvain, Jr.
                                                          United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).